# Griffith *v.* The State.

*Indictment for Murder.*

1. *Indictment; clerical errors, misspelling, or omission of letters.*—In an indictment for murder, the omission of the last three letters of the word *aforethought,* leaving it *aforethou,* is matter of substance, and destroys the legal sufficiency of the count.

2. *Accessory before the fact, in case of felony.*—An accessory before the fact, in a case of felony, may be indicted, tried, and punished as a principal (Code, § 3704); and if he instigated, advised or commanded the commission of the act, but was not present when it was committed, it is not necessary for the prosecution to show that it was committed in the particular way instigated, or that any special time, manner or place was suggested.

3. *Sufficiency of evidence, and charge as to.*—To authorize a conviction in a criminal case, the law requires that the jury shall be satisfied "beyond a reasonable doubt;" and a charge requested, which requires "clear and distinct proof," is properly refused.

4. *Impeaching party's own witness.*—While a party is not allowed to impeach his own witness, he may ask if the witness has not made prior contradictory or inconsistent statements, for the purpose of refreshing the memory of the witness, or showing that he has himself been taken by surprise by the testimony given being different from prior statements made by the witness.

5. *Declarations of midwife; whether hearsay, or res gestæ.*—The defendant being indicted for the murder of two illegitimate children of his step-daughter, who died from starvation or exposure in the woods when about two weeks old, their mother can not testify, on the part of the defendant, that the midwife told her, before they were carried away, "that they were in a bad fix, but would get well if they could get good breast milk, and advised her to let them be taken where they could get it." If the evidence is relevant, the midwife should be called to prove the facts.

6. *Proof of character.*—The defendant being indicted for a murder committed in Madison county, Alabama, a witness who did not know him before that time, but who afterwards went to his residence in Tennessee, can not testify to his character as there learned.

7. *Indictment charging murder of two infants.*—As to the sufficiency of an indictment wh'ch charges, in one and the same count, the murder of two infants by exposure and starvation, *quære.*

FROM the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

The indictment in this case was returned into court on the 9th August, 1890, and contained two counts, each charging the defendants, George Griffith, John Robertson, and Martha Miller, with the murder of two infant children, whose names were to the grand jury unknown; the first count charging that they were murdered "by taking them from the house, and leaving

them exposed in the woods, whereby they died;" and the second, "by leaving them in the woods, whereby they died from starvation." Each count alleged that the names of the infants were unknown to the grand jury, and contained no descriptive or identifying words; and the second count alleged that they were killed unlawfully "and with malice *aforethou*," instead of "*aforethought*." The defendant demurred to each count of the indictment, because it charged two distinct offenses, and because the infants were not sufficiently described, or identified; and specially to the second count, because it did not allege that the offense was committed with malice *aforethought*. The court overruled the demurrer, and the defendant then moved that the prosecution be compelled to elect on which count it would proceed; and he renewed this motion after the evidence was closed, duly excepting to its refusal. A severance having been granted, and George Griffith being on trial alone, he pleaded not guilty, but was convicted of murder in the second degree, and sentenced to the penitentiary for the term of twelve years.

On the trial, the State introduced evidence showing that, in May, 1890, the dead bodies of two infant children, about two weeks old, were found under an oak tree near Trinity Church in Madison county, wrapped up in an old shawl, and exhibiting no marks of violence; and that they were the illegitimate twin children of Dee Griffith, who was a step-daughter of the defendant, and who lived with him at Fayetteville, Tennessee. Dee Griffith testified, on the part of the State, that in April, 1890, the defendant carried her in a buggy from Fayetteville, "to go to his brother's in Madison county, Alabama, where she expected to remain until after her confinement, but stopped at the house of one Jordan Richardson, where she remained until after her confinement, giving birth to twins, a boy and a girl; that the effects of poison oak in her system broke out on her afterwards, and her milk began to disagree with the children; that after talking the matter over with Martha Miller, the midwife, her step-father and herself concluded it would be best to get a wet nurse for them; that when the children were about two weeks old, her step-father came to the house with John Robertson, and proposed to give the children to him, saying that he had a sister living near Huntsville who would nurse them; and that defendant, with John Robertson and Martha Miller, took the children and carried them off." The witness admitted that the defendant had gived her a bottle of medicine to cause an abortion, and was then asked by the solicitor, if the defendant had not threatened to smother the child, if it should be born alive; to which she answered in the negative.

Vol xc.

The solicitor then asked her, "Did you not tell me in the room there, yesterday, that the defendant had told you, before the baby was born, that he intended to smother it," and answered, "You asked if that was the truth, and I never made any answer." The defendant objected to this question and answer each, on the ground that it was an attempt by the State to impeach its own witness, and he excepted to the overruling of his objection.

The defendant asked said witness, "if Martha Miller did not tell her that the babies were in a bad fix, but would get well if they could get good breast-milk;" also, "that Martha Miller said, as they were leaving with the children, that Robertson would carry them to his sister's." The court sustained objections to each part of this evidence, and the defendant excepted. The defendant also "offered to prove by witnesses that, several days before the babies were carried off, Martha Miller advised said Dee Griffith to send them away, and advised it on the day they were sent off ;" and he excepted to the exclusion of this evidence. Other exceptions were reserved to rulings on evidence, which require no special notice.

John Robertson was introduced as a witness for the State, and testified that the defendant "had offered him $25 to take the children away, gave him four dollars on the morning they were taken away, and told him to take them away, but never told him to kill them;" that defendant went with him and Martha Miller, when the children were carried away, as far as Martha Miller's house, where he left them; that Martha Miller then fed them, and gave them to him, with a bottle of milk for them, and went with him some distance to point out the Huntsville road; that he took the children from her, wandered about until late in the evening, trying to find a place where he might leave them, and finally laid them down under the tree where they were found; and further, that the defendant, on leaving him at Martha Miller's house, told him, "Take the children, and do away with them."

The defendant requested the following (with other) charges in writing: (1.) "The second count in the indictment does not charge murder in the first degree." (3.) "Before the jury can convict George Griffith to their entire satisfaction, and beyond a reasonable doubt, they must find that he had the criminal intent to murder these infants, and had agreed or conspired with John Robertson to actually kill them, before they were left to die of exposure or starvation." (6.) "If the defendant did not himself actually leave the infants to be exposed or starved, then he can not be convicted, unless he counseled, incited, or aided and abetted another to so leave them; and

[Griffith v. The State.]

the jury can not conclude that he did so counsel, incite, or aid and abet another to do the act, except upon clear and distinct proof of it." (7.) "If the defendant did not himself actually leave the infants to be exposed or starved, then he can not be convicted, unless he counseled or incited another to so leave them; and the jury can not conclude that he did so counsel and incite another to do the act, except upon clear and distinct proof of it." (8.) "The *gravamen* of the offense charged is the killing of two infants by leaving them exposed in the woods, whereby they died of exposure or starvation; and unless the defendant actually participated in the said offense of so leaving them exposed or to starve, or aided and abetted therein with knowledge of the intended crime, the jury should find him not guilty." (9.) "The *gravamen* of the offense charged is the killing of two infants by leaving them in the woods, whereby they died of the exposure, or of starvation; and unless the defendant actually participated in the said offense of so leaving said infants exposed, or to starve, the jury should find him not guilty." (10.) "If the jury find that some other person than the defendant left the infants exposed, and that the defendant was not present when they were so left; then, unless it is proved beyond a reasonable doubt that he counseled, commanded, or procured such other person to commit the offense, their verdict should be not guilty." (11.) "Unless it is proved beyond a reasonable doubt that the infants died from starvation or exposure, and that the defendant so left them exposed, or aided and abetted the person who so left them, intending that they should be so left exposed, or to starve, the jury should find a verdict of not guilty." Exceptions were duly reserved to the refusal of each of these charges.

D. D. SHELBY, and W. L. CLAY, for appellant.—(1.) Each count of the indictment was demurrable for duplicity.—Whart. Crim. Pl. & Pr., § 468; 49 Cal. 452; 3 Lea, Tenn. 700; 2 Cold. Tenn. 508; 9 Wend. 193; 2 Ld. Raym. 1572; 1 Brick. Dig. 500, § 750. (2.) The second count, if it charges any offense, certainly does not charge murder in the first degree, and was improperly joined with the first.—*Johnson v. State*, 29 Ala. 67; *Irwin v. State*, 49 Ala. 354; 4 Porter, 192. (3.) The statements of the parties, as they left the house with the children, were competent evidence.—Whart. Crim. Ev., § 262. (4.) Evidence as to the character of the defendant, from information acquired after the commission of the offense, was improperly received.—Whart. Crim. Ev., § 62; *Com. v. Carter*, 2 Va. Cases, 169. (5.) As to the defendant's liability as an accessory before the fact, the charges asked asserted correct

[Griffith v. The State.]

propositions.— *Wicks v. State,* 44 Ala. 400; 1 Amer. & Eng. Encyc. Law, *Accessory.*

WM. L. MARTIN, Attorney-General, for the State.—(1.) The indictment was not subject to the charge of duplicity. *Hurst v. State,* 86 Ala. 604; *Ben. v. State,* 22 Ala. 9; *Johnson v. State,* 12 Ala. 840. (2.) The second count was a good count for murder.— *Grant v. State,* 55 Ala. 201. If it charged no offense, the conviction will be referred to the first count. *May v. State,* 85 Ala. 14; *Rowland v. State,* 55 Ala. 210; *Glenn v. State,* 60 Ala. 104. (3.) The question propounded to Dee Griffith was not intended to impeach her, and was properly allowed.— *White v. State,* 87 Ala. 24. (4.) The statement of Martha Miller was no part of the *res gestœ,* and was properly rejected.—1 Greenl. Ev., § 108; Whart. Crim. Ev., §§ 262–3. (5.) The evidence as to character was confined to time prior to the commission of the offense.—*Moulton v. State,* 88 Ala. 116. (6.) Positive proof of the common unlawful purpose was not essential to a conviction.—*Martin v. State,* 89 Ala. 115.

CLOPTON, J.—The general rule is, that a clerical error, or misspelling, or the omission of letters from a word, does not vitiate an indictment, unless the word is thereby changed into one of different import, or the sense so obscured that a person of ordinary intelligence can not from the context determine with certainty the meaning.—10 Amer. & Eng. Encyc. of Law, 548. In *Grant v. State,* 55 Ala. 201, the rule is thus stated: "Before an objection because of false grammar, incorrect spelling, or mere clerical error, is entertained, the court should be satisfied of the tendency of the error to mislead, or to leave in doubt as to the meaning a person of common understanding, reading, not for the purpose of finding defects, but to ascertain what is intended to be charged." The omission of the letters *ght* from the word *aforethought,* in the second count of the indictment, scarcely comes within the rule. Though a clerical omission, which does not change the word into another of different import, it leaves a collection of letters forming no word of any significance whatever, and incapable of like sound. A lawyer would understand what was intended to be charged, but one of ordinary intelligence would be left in doubt as to the meaning. The specified letters being omitted, the count does not allege that the killing was with malice aforethought, which is essential to charge the offense of murder.

Section 3704 of the Code declares: "The distinction between an accessory before the fact and a principal, and between

[Griffith v. The State.]

principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors." An accessory before the fact is one who counsels, commands, or procures another to commit a crime, not being himself actively or constructively present at the time of its commission. It is not essential that any specific mode of perpetrating the crime should be counseled or commanded, or that it should be done in the particular way instigated. The inciter may be indicted, convicted and punished under the statute, if the principal commits the crime, though he may vary the mode or circumstances of perpetration, or though no particular manner, time or place may have been counseled or instigated.—*Hughes v. State*, 75 Ala. 31; 1 Amer. & Eng. Encyc. of Law, 67–69.

The charges requested by defendant, predicated upon the fact that he did not himself leave the infants in the woods, and was not present when it was done, were calculated to mislead the jury. They would have understood that, in order to convict, the State must show that defendant counseled or instigated the killing of the infants by exposure in the woods. Also, the charge exacts too high degree of proof—"clear and distinct proof." The requirement of the law is, satisfaction "beyond a reasonable doubt"—that degree of certainty which produces an abiding conviction of the truth of the charge. The expression used would have tended to impress the jury with the idea, that the evidence must be of such character as to produce conviction of guilt beyond *any doubt*, and also positive. It is inapt, and inaccurate, when used in an instruction to the jury.

Charges eight, nine and eleven assert the proposition, that unless defendant did some act of actual participation, or aided or abetted in leaving the infants exposed, which acts would constitute him a principal in the second degree, he can not be convicted under the statute. This is manifestly incorrect; for, if defendant was actually or constructively present, participating in the act, or aiding and abetting, he can not be an accessory before the fact, and such accessory, as we have seen, may be indicted, tried and punished, under the statute, as a principal.—*Hughes v. State, supra; Rayford v. State*, 59 Ala. 106.

Though a party can not impeach his own witness, he may inquire of him, whether he has not made statements contradictory of, or inconsistent with his evidence on the trial, for the purpose of refreshing his memory, or of showing that he

Vol. xc.

has been surprised by evidence differing from what the prior statements of the witness induced him to expect. Otherwise, a party may be entrapped and put to a great disadvantage by an artful and hostile witness. We do not understand that the purpose of the inquiry made by the solicitor of the witness Dee Griffith was impeachment, but to prevent the State being prejudiced by her unexpected testimony.— *White v. State,* 87 Ala. 24.

Evidence of the statements of the midwife, as to the condition of the infants, and that they would get well if they could get good breast-milk, and that she advised that they be taken where they could get it, was properly excluded. The midwife should have been called to have proved the facts, if relevant; her statements were not part of the *res gestæ.* The evidence is not "that of the event speaking through participants;" but the statements of an observer.—Whar. Cr. Ev. §§ 262.

It appears that, prior to and at the time of the commission of the offense, defendant lived at Fayetteville, Tennessee. The court permitted the State to prove that his general character was bad previous to its commission, by two witnesses, who testified they did not know defendant before the offense was committed, nor where he lived; but, learning that he resided at Fayetteville, they went there for the purpose of investigating, and knew his general character from what they learned on that visit. That a witness may be competent to testify to defendant's general character, he must possess the means of knowing what it is before the commission of the offense. A stranger, sent to the place of his residence after the offense had been committed, for the purpose of learning his general character prior thereto, is incompetent to testify to such character.—*Douglass v. Tonsey,* 2 Wend. 352; 1 Greenl. Ev. § 461; 1 Whar. Ev. § 563. In *Reid v. Reid,* 17 N. J. Eq. 101, much of the evidence as to the character of the witness was founded on opinions expressed by others after their examination, and a material portion was furnished by a person who made inquiries in the neighborhood of their residence, for the purpose of procuring evidence in the cause. It is said : " All this evidence is clearly incompetent. No rule is better settled, or founded on clearer principles, than that which excludes all testimony touching reputation founded on opinion expressed *post litem motam.* Not only should the character of the witness be founded on reputation previously existing, but a stranger sent by a party to the neighborhood of the witness, to learn his character, will not be permitted to testify as to the result of his inquiries. "

We have not considered the objection to the indictment

based on the ground, that it charges the killing of two infants in the same count. The members of the court are not agreed in opinion, whether the indictment charges a single offense, or distinct offenses in the same count. As the case must be reversed, we leave this question undecided; but recommend, as the safer course, that a new indictment be found, charging the offense in a manner to meet any state of the evidence.

Reversed and remanded.

*Indictment for Murder.*

