241 So.2d 132

**Houston Kenneth KILPATRICK**

v.

**STATE.**

**6 Div. 96.**

Court of Criminal Appeals of Alabama.

Nov. 17, 1970.

George Beck and Thomas A. Smith, Jr., Cullman, for appellant.

MacDonald Gallion, Atty. Gen., and Joseph Victor Price, Jr., Asst. Atty. Gen., for the State.

PER CURIAM.

This is an appeal from a judgment of conviction for the offense of robbery. Sentence imposed was for ten years in the penitentiary.

According to the state's evidence, in the early morning of May 16, 1966, three armed men entered the home of Mr. and Mrs. Earnest Farley in Cullman County, Alabama, announcing it was a holdup. Mr. Farley resisted, gunfire followed and he was shot in the shoulder and beaten on the head with pistols.

Mrs. Farley armed herself with a revolver, but threw it down when the men threatened to kill her husband unless she did so. Upon leaving the premises one of the men took the pistol estimated to be of the value of $25.00.

Mr. and Mrs. Farley and their sixteen year old son Douglas, identified the defendant as one of the three men at their home.

The defense interposed was an alibi. The defendant insisted that he had no connection with the commission of the offense. He testified and offered the testimony of other witnesses to the effect that he was in Madison County, several miles distant at the time the crime was perpetrated.

The testimony presented questions for the jury's determination and was sufficient to sustain the judgment of conviction.

Upon the trial the defendant filed a plea of former jeopardy, said plea alleging that on November 14, 1966, he was placed on trial on an indictment charging him with the offense embraced in the present indictment, and that a nolle prosse was granted, thereby acquitting the defendant.

The state filed replication, alleging that the indictment on which defendant was put to trial in November, 1966, charged "willingly to part with the same," instead of concluding "unwillingly to part with the same," and the indictment was quashed because of defendant's non-consent to an amendment of the same.

Defendant's demurrer to the replication was overruled and the court "dismissed" the plea of former jeopardy.

In Griffith v. State, 90 Ala. 583, 8 So. 812, the court said: "The general rule is that a clerical error, or misspelling, or the omission of letters from a word does not vitiate an indictment, unless the word is thereby changed into one of different import, or the sense so obscured that a person of ordinary intelligence can not from the context determine with certainty the meaning."

In *Griffith,* supra the omission of the letters "ght" from the word "aforethought" was held to be fatal.

In Parker v. State, 114 Ala. 690, 22 So. 791, the indictment charged that defendant, with intent to steal, broke into and entered the "dwell-house" of another. The court held the omission of the letters "ing" from the word "dwelling" destroyed the legal sufficiency of the indictment.

The omission of the letters "un" from the word "unwillingly," changed the meaning of the word. We cannot say that a person of ordinary intelligence, being totally unfamiliar with the form of the indictment for robbery, Code 1940, Title 15, § 259(95), would understand that the indictment charged the property was taken contrary to the will of the owner.

The term "willingly" is defined to mean "freely, voluntarily, readily, without reluctance, in the manner of being ready to do an act, of free choice, with one's free choice or consent; as if a man inclines or is favorably disposed to do an act." Edwards v. State, 21 Ala.App 375, 108 So. 639.

■ Under the above authorities, we hold the original indictment was void and could not have supported a conviction. The action of the trial judge in entering a nol pros., and ordering a new indictment was a sufficient answer to the plea of former jeopardy. Title 15, Sec. 258, Code 1940. The demurrer to the replication was properly overruled. Biggers v. State, 20 Ala.App. 632, 104 So. 681.

In brief appellant insists the trial court erred in dismissing the plea of former jeopardy should be tried by the jury in said plea.

■ Generally, an issue of former jeopardy should be tried by the jury in advance of the issue of not guilty. Parsons v. State, 179 Ala. 23, 60 So. 864. But the allegations of the replication disclose that the plea of former jeopardy was un-available. While technically the court erred in determining the issues raised, we are of opinion no prejudice resulted from the failure to submit the issue of former jeopardy to the jury. The result would be the same, regardless of the procedural method employed. Mikell v. State, 242 Ala. 298, 5 So.2d 825; Shiflett v. State, 37 Ala.App. 300, 67 So.2d 284; Supreme Court Rule 45.

■ Appellant argues there were fatal variances between the allegation that the .22 caliber pistol was the property of Earnest Farley and proof that it was jointly owned by the Farley family and between the allegation that the pistol was feloniously taken from the person of Earnest Farley and proof that when "taken" the pistol was in the possession of Mrs. Farley.

Title 15, Sec. 245, Code, provides:

"When any property, upon or in relation to which the offense was committed, belongs to several partners or owners, it is sufficient to allege the ownership to be in any one or more of such partners or owners * * *."

There was no variance between the allegation of ownership and the proof introduced.

■ Nor do we find a variance between the allegation that the pistol was taken from the person of Earnest Farley and the proof that it was taken in his presence.

In Henderson v. State, 172 Ala. 415, 55 So. 816 considering the elements and nature of the crime of robbery the court said:

" 'The offense is against both the person and against the property. * * * The three essential elements of the offense are: (A) Felonious intent; (b) force, or putting in fear, as a means of effectuating the intent; (c) and, by that means, a taking and carrying away of the property of another from his person or in his presence.' Thomas v. State, 91 Ala. 34, 9 So. 81."

The court stated that a taking from the person occurs when possession of the prop-

erty is taken "in the presence of the party offended against, and who then had the property 'under his direct physical personal control'—a taking not necessarily from actual contact of the body, but from under his personal protection. Thomas' case supra; 2 Bish Cr.Law, Secs. 1177, 1178."

Mr. Earnest Farley testified:

"Q. You said your wife had that pistol?

"A. Yes, sir.

\*　\*　\*　\*　\*　\*

"Q. When the three men got inside with you and your wife had the gun, what happened or what was said?

"A. They told her to throw the gun down that they was going to shoot me if she didn't.

"Q. Did she throw the gun down?

"A. Yes, sir.

"Q. And this was the .22 revolver that you have just described?

"A. Yes, sir.

"Q. What happened to the gun, if anything?

"A. Some of them got it. I don't know which one.

"Q. One of the three men?

"A. Yes, sir.

"Q. What did he do with it?

"A. I don't know.

"Q. Well, what was happening to you during this time?

"A. Well, after she throwed the gun down they grabbed me and throwed me down and commenced hitting me with their guns on top of my head and they was a running around. One of them commenced stomping me and I got madder and I knocked one of them across the living room and then one of the other ones, I knocked him the other way. And I run and got a gun and when I whirled around it didn't have any shells in the chamber."

Mrs. Farley testified a gun was fired at her and that one of the men got the pistol after she dropped it to the floor.

It is apparent from this evidence that the putting in fear and force applied caused Mrs. Farley to part with the possession of the gun. The force and fear continued after she relinquished possession. As was noted by Justice McClellan in Thomas v. State, supra, "We do not doubt that after its relinquishment by B., if left in the presence of A., the latter had such possession as that to take it away by such force, or the putting in such fear, as to prevent or overcome his resistance would have been robbery."

■ Defendant's motion for a change of venue was denied. In support of said motion defendant introduced eight articles from the Cullman Times, a newspaper published in Cullman, together with records of mistrials, habeas corpus and other court proceedings involving the alleged robbery.

The defendant has the burden of showing to the reasonable satisfaction of the court that "an impartial trial and an unbiased verdict cannot be reasonably expected." Godau v. State, 179 Ala. 27, 60 So. 908. We are of opinion the defendant has failed to meet this burden. In Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, we held that without proof of their prejudicial effect newspaper clippings are not sufficient to sustain the burden.

■ The defendant objected to the introduction of two photographs of Mr. Earnest Farley, showing the wounds sustained during the commission of the crime. The grounds of objection were that the photographs were immaterial, inflammatory, and did not show the condition of Mr. Farley immediately after the event. One of the photographs show head wounds after they were sewed with black sutures.

The photographs were admitted without error. McKee v. State, 33 Ala.App. 171, 31 So.2d 656, and cases cited. The fact that the wounds had been sutured did not affect the admissibility of the photographs. Hurst v. State, 277 Ala. 686, 174 So.2d 325.

The first man Mr. Farley saw the morning of the robbery said: "About that generator that I got from you the other night" —and jammed the gun to his ribs. Mr. Farley recognized him as a man to whom he sold a Ford generator the evening of May 13th. Mr. Farley stamped the number 4 twice on the generator. All three of the men were strangers to the Farleys.

The circumstances leading to defendant's apprehension are as follows:

Mr. J. T. Hanners observed a Maroon colored Ford automobile, which matched the description of the car used by the robbers, stop at an abandoned house near his home. Two men got out of the car and ran into the deserted house and the car drove away. In the late afternoon the men were picked up by someone in a black car. The next Friday the Hanners saw a 1966 Oldsmobile with a light grey bottom and dark top, drive to the house. A man got out and went in the house. After a short time he ran out, got in his car and left. Mrs. Hanners took the tag number of this automobile. The number she got was incomplete (25– 19–? –25) but the sheriff was notified. The sheriff started in the direction of the abandoned house when he saw an Oldsmobile of the same description. He followed this automobile and saw it turn into the yard at the residence of defendant's father. The automobile owned by Mr. Hugh Kilpatrick, defendant's father, bore a tag numbered 25–19825.

Sheriff Waldrop then went before W. Marvin Scott Judge of the Intermediate Court of Cullman County and obtained a warrant for the search of the premises of Hugh Kilpatrick and a 1965 Maroon Ford. Before requesting the warrant the abandoned house had been searched and three pistols and empty shell cases were found. One of the pistols was identified as the one used in shooting Mr. Farley. As probable cause for the issuance of the warrant the sheriff alleged the fact of this discovery; that Hugh Kilpatrick's car had been seen at the abandoned house; that the 1965 Maroon Ford seen at the Farley house during the robbery was observed parked in the yard at the Hugh Kilpatrick residence.

A warrant was issued for the search of the premises of Hugh Kilpatrick. The search revealed a generator in a tool shed about 50 feet behind the house. The generator had two number 4's stamped on it. The State Toxicologist, Dr. Rehling, testified these numbers had been stamped on the generator by the dies in Mr. Farley's shop.

■ Defendant objected to the evidence relating to the search and to the admission in evidence of the generator. The objection was overruled.

To be afforded protection against an unlawful search and seizure, "one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Thomas, D.C., 216 F.Supp. 942.

The affidavit and the search warrant named Hugh Kilpatrick, defendant's father, as the party against whom the search was directed and the search was conducted on his premises. Defendant claimed no proprietory or possessory interest in the premises or the generator. In fact, he testified he was living with his wife at a trailer court. The evidence was properly admitted.

Talmadge Farley, Earnest Farley's brother, testified defendant was with the man who bought the generator from Earnest Farley on May 13th. This the defend-

ant denied. He testified and offered witnesses to prove that at the time he was at a night club several miles away.

The judgment is affirmed.

Affirmed.