Assault with intent to murder; sentence: twenty years imprisonment.
The undisputed evidence proves that on December 29, 1976, Earnest Lee Witherspoon, Fletcher Williams, David Young, and Johnny Spencer robbed the Parkview branch of the First National Bank of Tuscaloosa. The four had planned the robbery at the appellant's house the day before. Young and Williams "cased" the bank and *Page 745 
reported back that there were only four women tellers working there. Young provided the gun, ski masks, and ammunition, and Witherspoon wrote the robbery note to be passed to a teller. The appellant and Williams went to and fled from the bank in Williams' automobile. Young and Spencer were in another vehicle.
All four entered the bank and then pulled their ski masks down over their faces. Six thousand five hundred and eighty-five dollars was taken from the bank. During the course of the robbery, Young fired a shot in the direction of the bank manager, but did not hit him. The four then ran from the bank, appellant and Williams going in one direction with Young and Spencer fleeing in the opposite direction through the drive-in tellers' area of the parking lot. As Young and Spencer ran past the drive-in tellers' windows, Young stopped and fired two shots into the car of Mrs. Mary Hartley, wounding her in the wrist and in the chin.
The report of the robbery and a description of Williams' automobile was immediately dispatched over police radio. Local law enforcement officers spotted Williams and the appellant driving toward Stillman College, and the pair were arrested approximately twenty-three minutes after the robbery occurred. Officers recovered from the trunk of Williams' vehicle the entire proceeds of the robbery along with a loaded .38 caliber Colt pistol, an unloaded .25 automatic pistol, and a box of .38 caliber shells.
The appellant testified in his own behalf and admitted fully his involvement in the bank robbery. He testified that he had agreed to participate in the robbery only if there would be no shooting. He said Young stated there would be no shooting because there were only four women working in the bank. Appellant testified that he removed the clip of ammunition from his gun and put it in the glove compartment of the car before the robbery, and that he carried an unloaded pistol during the course of the robbery. His whole defense was that he did not commit the assault and did not intend to shoot anyone, that the assault was committed independently by Young after the robbery was over and outside the presence of the appellant.
 I
Title 14, § 14, Code of Alabama 1940 (now § 13-9-1, Code of Ala. 1975) provides:
 "The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors."
As to the criminal responsibility of co-conspirators, this court has on many occasions cited Stokley v. State, 254 Ala. 534, 49 So.2d 284 (1950) for the following proposition:
 "It is well established that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. . . . Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. . . .
 "When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. . . ."
(Citations omitted.)
Stokley takes its proposition of law from Morris v. State,146 Ala. 66, 41 So. 274 *Page 746 
(1906) which statement of law originated in Tanner v. State,92 Ala. 1, 9 So. 613 (1890). From reading those cases, it is likewise certain that a person engaging in a joint enterprise is not automatically and equally guilty of a crime committed independently by another participant in the venture. A different crime independently committed and not a forseeable consequence of the purpose of the conspiracy is not covered in the broad and sweeping statements of Stokley, supra. Howell v.State, Ala.Cr.App., 339 So.2d 138 (1976). Tanner holds:
 ". . . all men are presumed to intend the proximate, natural, and logical consequences of acts intentionally done; . . . If such conspiracy, or community of purpose, embrace[d] the contingency that a deadly encounter may ensue, with the common intention, express or implied, to encourage, aid, or assist, even to the taking of life, should the exigencies of the encounter lead up to result; then, as a general rule, the act of one becomes the act of all, and the one who encourages, or stands ready to assist, is alike guilty with the one who perpetrates the violence. . . ."
The appellant seeks to escape criminal responsibility for the deadly assault committed by his accomplice Young by stating that he did not intend that there be any shooting during the course of the robbery and that he personally carried an unloaded pistol.
The issue is whether the assault in question was a direct, proximate, natural, and foreseeable result of the conspiracy formed. In the instant case, the appellant and his companions were active participants in an armed robbery. One shooting occurred during the robbery itself, and the shooting in question occurred immediately outside the building on the bank premises as the participants were fleeing the scene of the crime. There was no evidence tending to show that the conspiracy had been abandoned when the shooting occurred. In fact, the robbers had agreed to depart in separate directions and meet after the robbery at a designated place.
One who participates in the planning of a robbery, who is present when loaded weapons are distributed to the accomplices, who knowingly participates in a robbery with his armed confederates, cannot later escape criminal responsibility for an assault with such a weapon by one of the accomplices by merely stating that he had unloaded his weapon and did not intend that any shooting occur. Any reasonable person could infer that a shooting is likely to happen during any stage of an armed robbery of a bank. Assault with intent to murder would be a foreseeable consequence of the joint enterprise in which the appellant and his accomplices were engaged. Howell, supra. Thus, the appellant could be properly charged and convicted pursuant to Title 14, § 14, supra, for the assault with intent to murder committed during any stage of the robbery by any one of his accomplices.
 II
The appellant contends that the trial court erred by overruling his plea of autrefois convict without requiring the State to file a motion in response and without having an evidentiary hearing on the plea.
The Supreme Court of Alabama in Racine v. State, 291 Ala. 684, 286 So.2d 896 (1973) held that there is no prejudicial error in failing to submit an unattacked plea of former jeopardy to the jury where there was no injury to the defendant. An appellant cannot be prejudiced by the trial court's overruling such a motion where his claim of former jeopardy is unfounded. Simpson v. State, Ala.Cr.App.,354 So.2d 317 [1977]; Kilpatrick v. State, 46 Ala. App. 290, 241 So.2d 132
(1970).
 "A plea of former jeopardy is unavailing unless the offense presently charged is precisely the same in law and fact as the former one relied on under the plea. And this is true even if both cases are founded on the same facts but the crimes charged were not the same in law. . . ." Racine, supra.
In the instant case, the appellant's plea of autrefois convict shows his prior *Page 747 
conviction to have been in a United States district court on an indictment charging bank robbery, whereas the instant trial was in a state circuit court on an indictment for assault with intent to murder. The plea shows upon its face that the two charges are not precisely the same in law and in fact. Regardless of whether the second offense arose during the commission of the first, they are separate offenses against different sovereigns requiring different elements of proof. And, successive state and federal prosecutions arising from the same transaction have been held to be permissible. Bartkus v.Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959);Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666,3 L.Ed.2d 729 (1959); United States v. Corbo, 555 F.2d 1279 (5th Cir. 1977). We therefore find that the trial judge did not commit error which was prejudicial to the appellant in overruling the instant motion.
 III
A pretrial hearing was held on the appellant's motion for a change of venue which set out only two grounds:
 "1. That the victim in this case, Mrs. Mary Hartley, is the wife of Mr. C.J. Hartley who has extensive political influence and power in this county and Defendant alleges said political influence will prevent him from obtaining a fair and impartial trial in that community sentiment and particularly that the venire would be so prejudiced with this influence that a fair trial would be impossible; and
 "2. That the publicity concerning the alleged incident was so pervasive throughout the public media of Tuscaloosa County that the venire would be so prejudiced as to be unable to render a fair and impartial verdict."
Counsel for appellant contends that the trial court abused its discretion by refusing to allow him to examine prospective jurors on the effect of pretrial publicity and in limiting his examination of witnesses concerning the effect Mr. Hartley's political influence would have upon a venire.
It is well settled in this state that a trial court has discretion as to how voir dire examination of a venire will be conducted. Johnson v. State, Ala.Cr.App., 335 So.2d 663 (1976). The record shows that counsel for appellant questioned the venire as a group rather than individually. Such a procedure was clearly within the discretion of the trial court. In fact, the trial judge could have legally prevented counsel from personally interrogating the venire by requiring that questions be submitted to the judge who would conduct the voir dire examination. Johnson, supra; Aaron v. State, 273 Ala. 337,139 So.2d 309, cert. denied, 371 U.S. 846, 83 S.Ct. 81,9 L.Ed.2d 82 (1962).
In attempting to show any possible influence upon the venire by Hartley's political standing in the community, counsel for appellant called several witnesses. Counsel attempted to read the name of each prospective juror to each witness and ask if each witness knew whether or not each prospective juror had worked in a political campaign with Mr. Hartley or had made financial contributions to such campaigns. The trial judge required counsel to show a list of the venire to each witness he proposed to call and limited the questioning to whether or not the witness knew if any member on the venire list had participated in political campaigns with Mr. Hartley.
Ralph Knowles, a local attorney, did not know if any members of the venire had worked in any political campaign with Hartley. Aaron D. Harris, knew that Hartley had worked in two gubernatorial campaigns, but had no personal knowledge of people who would make political contributions to those campaigns. He stated that he only saw two names that he recognized on the venire list, and that he did not know if they had been connected with any political campaigns. James Boone, Jr., testified that he could not answer whether any of the members of the venire were political workers or contributors in campaigns with Mr. Hartley since he had never been a campaign worker with Mr. Hartley. Judge John Karrh had worked in political campaigns *Page 748 
with Mr. Hartley in the past, but did not recognize any name on the list that had worked in a campaign.
Frank Moody, a local banker, testified that he had been involved in political campaigns with the Hartleys, but recognized no one on the venire who had been involved with them politically. Delaine Mountain, a local attorney and city commissioner, testified that he could not identify anyone on the venire as having worked in a political campaign with Mr. Hartley. Anne Plott testified that she was familiar with Mr. Hartley, but would have no knowledge of which people worked in or contributed to campaigns in which he was involved. Frank Manderson, Mayor of Northport, testified that he was fairly knowledgeable about political affairs in Tuscaloosa County. He stated that he had not worked in common campaigns with Mr. Hartley, and that he would have no way of knowing if any members of the venire were political workers or contributors to such campaigns.
Some of the witnesses had heard the case mentioned or had read a news article about the case, but none recalled the appellant being mentioned. None of the witnesses had formed any opinion as to the guilt or innocence of any of the defendants based upon what they had heard or read about the case.
The trial court took judicial notice that by the 1970 census, Tuscaloosa County had a population of 116,029 and that any publicity that might have been generated about the case in December 1976 would have been dissipated by the time of the hearing on motion for change of venue on June 3, 1977. The trial judge noted that there had been no call for mob action from anyone as a result of the publicity, and that he had not read or been shown where there was any call for strong or unusual punishment in the case. The trial judge denied the motion for change of venue and stated that when the jury was selected, appellant would have an opportunity to question jurors as to whether or not Mr. Hartley's political connections would have any effect upon their decision.
In filing a motion for change of venue pursuant to Title 15, § 267, Code of Ala. 1940 (now § 15-2-20, Code of Ala. 1975), the burden is upon the appellant to show the trial court that he is unable to receive a fair and impartial trial in that county. Mere allegations of widespread publicity or of the political influence of a party involved in the controversy is insufficient. Johnson, supra; Yoemans v. State, 55 Ala. App. 160, 314 So.2d 79 (1975). In the instant case, we find that the appellant totally failed to meet the burden of proof required to obtain a change of venue. Neither do we find that the trial judge acted improperly in imposing limitations on the scope of examination of witnesses during the hearing on the motion for change of venue. The appellant was given a fair opportunity to examine witnesses concerning the political influence of Mr. Hartley in the community, and was even allowed to use the hearing as a means of discovery to determine if any witness knew of any political connections between Mr. Hartley and members of the venire. We view the trial court's actions as merely confining counsel to relevant questions and preventing the trial from becoming an endless affair. A trial judge is vested with great discretion in the conduct of a trial, and in the absence of clear abuse, we will not interfere with the manner in which he conducts his court. Dolvin v. State,51 Ala. App. 540, 287 So.2d 250 (1973).
 IV
The trial court refused the appellant's written Requested Charges No. 1 through 56 which appellant assigns as error. In his brief, counsel contends that all charges were correct and should have been given, but specifically argues that Charges 2, 4, 6, and 23 were erroneously refused and that the Allen charge was erroneously given. The charges set out in brief with particularity are as follows:
 "2. The Court charges the Jury that if the Jury is not convinced from the evidence beyond all reasonable doubt that the offense of assault with intent to murder was within the common design of the *Page 749 
Defendant and another, then the Jury must acquit the Defendant of the charge of assault with intent to murder."
 "4. The Court charges the Jury that if the Jury finds from the evidence that the common design of the Defendant and another accused included only the robbery of the Parkview Branch of the First National Bank of Tuskaloosa, and did not include an assault with intent to murder, then the Jury must acquit the Defendant of the charge of assault with intent to murder."
 "6. The Court charges the Jury that if the Jury finds by the evidence that the common design of the Defendant and other co-accused was and included only the robbery of the Parkview Branch of the First National Bank of Tuskaloosa, and did not include an assault with intent to murder, then the Jury must acquit the Defendant of the charge of assault with intent to murder."
 "23. The Court charges the Jury that if they are not convinced by the evidence that any of the co-accused had the intent to commit murder at the time of the shooting at the Parkview Branch of the First National Bank of Tuskaloosa, then the Jury must acquit the
 Defendant of the charge of assault with intent to murder, and find him guilty only of assault and battery."
The trial court gave an extensive charge to the jury which covered in detail the law concerning conspiracy and aiding and abetting. The jury returned to the courtroom later and asked for further instructions on what constitutes a conspiracy or aiding and abetting. The judge recharged the jury at length on that point of law after which the jury retired, but was unable to reach a verdict. The jurors asked the court to give further instructions, "regarding the requirements to prove assault with intent to murder relating to the conspiracy to commit a separate and distinct crime." The court did not quite understand the question, and a juror stated:
 ". . . How is that related again to people involved in conspiracies, one person commits — does the action and another person is involved in the first act and has nothing to do with the second act —"
The court again gave further instructions on the law relating to accomplices and to the foreseeability of some act committed by one of the perpetrators in a conspiracy. Several more questions were asked by the jurors, and further instructions were given by the court concerning conspiracy and foreseeable consequences of the conspiracy. The trial court finished its summation by giving the Allen, or "dynamite," charge. After the jury left the courtroom to resume deliberations, defense counsel objected to the trial court giving the Allen charge stating that it was his opinion that the jury should have time to think through the questions of law prior to receiving that charge. The trial court overruled the objection, and the jury later returned with a verdict of guilty.
Charges 2, 4, and 6 cover the same rule of law which was substantially and fairly given in the court's oral charge to the jury concerning the subject of conspiracy and whether a particular criminal act of one conspirator is a foreseeable consequence of the purpose of the conspiracy. The trial court gave repeated charges on those points of law and was therefore not required to give the appellant's requested charges concerning the same subject.
Charge No. 23 is an incorrect statement of law and is misleading. In effect, it would instruct the jury that if none of the co-defendants had the intent to commit murder at the time of the shooting, then the jury must acquit the appellant of the instant charge, but must find him guilty of assault andbattery. Such charge is improper for the reason that if the jury found that none of the conspirators had the intent to murder, then their verdict could be not guilty. The clear inference from Charge No. 23 is to confine the jury to a finding of guilt of assault and battery and precludes the jury from a finding of not guilty based upon the hypothesis of the charge.
The appellant's exception to the Allen charge is not well taken for two reasons: *Page 750 
(1) Giving the Allen charge is not improper in Alabama.Strickland v. State, Ala.Cr.App., 348 So.2d 1105, cert. denied, Ala., 348 So.2d 1113 (1977).
(2) The exception was untimely and should have been made in the presence of the jury and prior to their retiring for deliberations. Tuberville v. State, Ala.Cr. App., 348 So.2d 868
(1977); Strickland, supra.
We have carefully reviewed the remainder of the charges and find that the same rules of law therein enunciated were substantially and fairly covered in the court's oral charge to the jury. Title 7, § 273, Code of Ala. 1940 (now § 12-16-13, Code of Ala. 1975).
Affirmed.
All the Judges concur.