PER CURIAM.
The petitioner, Timothy L. Ryals, a Mobile County sheriff deputy, filed this petition for a writ of mandamus directing Judge James C. Wood to dismiss the four-count indictment against him. Ryals was indicted by the Mobile County January 2001 grand jury for four counts of violating § 13A-9-3, Ala.Code 1975, by falsely certifying that he had served summonses and complaints when, in fact, he had not. Ryals moved to dismiss the indictment based on double-jeopardy grounds because he had already been punished by his employer, the Sheriff of Mobile County, with suspension from his employment and the loss of use of a county-owned vehicle. He moved for a jury trial on the issue. See Rule 15.4(b), Ala.R.Crim.P. Judge Woods denied the motion for a jury trial and denied the motion to dismiss. Ryals then moved that Judge Woods stay the case so that he could file a mandamus petition in this Court. Judge Woods granted the motion to stay. This petition followed.
Initially, we note that this case is correctly before this Court by way-of a mandamus petition. As we stated in Ex parte K.H., 700 So.2d 1201, 1202 (Ala.Crim.App.1997):
“The Alabama Supreme Court addressed this issue in Ex parte Ziglar, 669 So.2d 133 (Ala.1995), where the Court, departing from the long-established practice of not reviewing double jeopardy issues by way of mandamus, stated:
“ ‘We are satisfied that a criminal defendant with a double jeopardy defense should not be foreclosed from pretrial correction of a trial judge’s erroneous denial of a plea of former jeopardy. Therefore, the appellate courts of this State will review double jeopardy claims properly presented by petitions for the writ of mandamus. Rule 21(e), Ala.R.App.P. This procedure will adequately protect the interest of a defendant, as emphasized in Abney [v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)], so as to avoid the personal strain, *116 public embarrassment, and expense of a subsequent criminal trial.’
“669 So.2d at 135.”
Ryals argues that Judge Woods erred in denying his request for a jury trial on his plea of double jeopardy. He contends that the issue whether his 25-day suspension from his job and his loss of use of a county-owned vehicle for that same period was equivalent to criminal punishment was a question for a jury to resolve.
Ryals relies on the case of Ex parte Adams, 669 So.2d 128 (Ala.1995), for his argument that he is entitled to a jury trial on the issue presented here. In Adams, the question presented was whether the prosecutor intentionally caused a mistrial so that a subsequent retrial was barred on double-jeopardy grounds. “Adams has raised factual, not legal, questions about whether the prosecutor acted improperly and intentionally to provoke the first mistrial.” 669 So.2d at 132. The question of the prosecutor’s intent was a question of fact, not a question of law. The situation presented in this cause is more analogous to the situation presented in Story v. State, 435 So.2d 1360 (Ala.Crim.App.1982), rev’d on other grounds, 435 So.2d 1365 (Ala. 1983). The questions presented in Story were “whether a conviction for trafficking in marijuana will bar a subsequent prosecution for possession of methaqualone when both charges arose from the same circumstances” and “whether a mistrial because of a deadlocked jury will bar a subsequent prosecution for the same offense.” 435 So.2d at 1364. The Story court stated:
“An accused is entitled to a jury trial on the issues of fact raised by the plea and the issue of former jeopardy should be submitted for the jury’s determination before submission of the issue of guilt. Kilpatrick v. State, 46 Ala.App. 290, 241 So.2d 132 (1970); Carter v. State, 43 Ala.App. 178, 184 So.2d 847 (1966); In-man v. State, 39 Ala.App. 496, 104 So.2d 448 (1958); Evans v. State, 24 Ala.App. 390, 135 So. 647 (1931).
“Where the issue presented by the plea is a question of law only, however, there is no need to submit that issue to a jury. Duncan v. City of Birmingham, 384 So.2d 1232 (Ala.Cr.App.1980); Billups v. City of Birmingham, 367 So.2d 518 (Ala.Cr.App.1978), writ quashed, 367 So.2d 524 (Ala.1979). The determination of this issue is within the province of the trial judge. In other areas involving questions of law, such as evidentiary matters, trial judges may rule without a hearing. Therefore, where a plea of former jeopardy presents on its face only questions of law, a hearing is not required.”
Story, 435 So.2d at 1364.
The question here — whether sanctions imposed on an employee by an employer will bar a subsequent criminal prosecution for the same conduct — does not involve any issue of fact. The question here is one of law. Judge Wood correctly held that Ryals was not entitled to a jury trial on this issue.
Thus, the question before us is: Did Judge Wood correctly hold that Ryals’s criminal prosecution for the same conduct for which he had been administratively sanctioned result in a violation of the Double Jeopardy Clause? A similar issue was presented to the United States Supreme Court in Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). In Hudson, the Supreme Court addressed whether “administratively imposed monetary penalties and occupational debarment” and later criminal prosecution for the same conduct resulted in a double-jeopardy violation. The Court disavowed its earlier analysis in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and reaffirmed the *117 rule announced in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The Hudson court, holding that there had been no violation of the Double Jeopardy Clause, stated:
“The Double Jeopardy Clause provides that no ‘person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.’ We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, ‘ “in common parlance,” ’ be described as punishment. United States ex rel. Marcus v. Hess, 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943) (quoting Moore v. Illinois, 14 How. 13, 19, 14 L.Ed. 306 (1852)). The Clause protects only against the imposition of multiple criminal punishments for the same offense, Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); see also Hess, supra, at 548-549, 63 S.Ct., at 386-387 (‘Only1 ‘criminal punishment’ ‘subjects] the defendant to “jeopardy” within the constitutional meaning’); Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (‘In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution’), and then only when such occurs in successive proceedings, see Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).
“Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. Helvering, supra, at 399, 58 S.Ct., at 633. A court must first ask whether the legislature, ‘in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one' label or the other.’ [United States v.] Ward, 448 U.S. [242], at 248, 100 S.Ct. [2634], at 2641 [(1980)]. Even in those cases where the legislature ‘has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect,’ id., at 248-249, 100 S.Ct., at 2641, as to ‘transfor[m] what was clearly intended as a civil remedy into a criminal penalty,’ Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).
“In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) ‘[w]hether the sanction involves an affirmative disability or restraint’; (2) ‘whether it has historically been regarded as a punishment’; (3) ‘whether it comes into play only on a finding of scienter ’; (4) ‘whether its operation will promote the traditional aims of punishment-retribution and deterrence’; (5) ‘whether the behavior to which it applies is already a crime’; (6) ‘whether an alternative purpose to which it may rationally be connected is assignable for it’; and (7) ‘whether it appears excessive in relation to the alternative purpose assigned.’ It is important to note, however, that ‘these factors must be considered in relation to the statute on its face,’ id., at 169, 83 S.Ct., at 568, and ‘only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, Ward, supra, at 249, 100 S.Ct., at 2641-2642 (internal quotation marks omitted).”
522 U.S. at 98-100, 118 S.Ct. 488. The Court stated that Congress had intended the monetary penalties imposed on those individuals that violated the federal banking statute to be civil in nature — they were imposed by Federal banking agencies, not the judiciary. The United States Supreme Court then stated:
*118 “Turning to the second stage of the Ward test, we find that there is little evidence, much less the clearest proof that we require, suggesting that either OCC [Office of the Comptroller of the Currency] money penalties or debarment sanctions are ‘so punitive in form and effect as to render them criminal despite Congress’ intent to the contrary.’ [United States v.] Ursery, [518] U.S. [267] supra, at 290, 116 S.Ct. [2135] at 2148 [(1996)]. First, neither money penalties nor debarment has historically been viewed as punishment. We have long recognized that ‘revocation of a privilege voluntarily granted,’ such as a debarment, ‘is characteristically free of the punitive criminal element.’ Helvering [v. Mitchell], 803 U.S. [391], at 399, and n. 2, 58 S.Ct. [630], at 633 n. 2, 82 L.Ed. 917 [(1930)]. Similarly, ‘the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as [enforceable] by civil proceedings since the original revenue law of 1789.’ Id., at 400, 58 S.Ct., at 633.
“Second, the sanctions imposed do not involve an ‘affirmative disability or restraint,’ as that term is normally understood. While petitioners have been prohibited from further participating in the banking industry, this is ‘certainly nothing approaching the “infamous punishment” of imprisonment.’ Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960). Third, neither sanction comes into play ‘only’ on a finding of scienter. The provisions under which the money penalties were imposed, 12 U.S.C. §§ 93(b) and 504, allow for the assessment of a penalty against any person ‘who violates’ any of the underlying banking statutes, without regard to the violator’s state of mind. ‘Good faith’ is considered by OCC in determining the amount of the penalty to be imposed, § 93(b)(2), but a penalty can be imposed even in the absence of bad faith. The fact that petitioners’ ‘good faith’ was considered in determining the amount of penalty to be imposed in this case is irrelevant, as we look only to ‘the statute on its face’ to determine whether a penalty is criminal in nature. Kennedy [v. Mendoza-Martinez], 372 U.S. [144], at 169, 83 S.Ct. [554], at 568, 9 L.Ed.2d 644 [(1963)]. Similarly, while debarment may be imposed for a ‘will-full’ disregard ‘for the safety or soundness of [an] insured depository institution,’ willfulness is not a prerequisite to debarment; it is sufficient that the disregard for the safety and soundness of the institution was ‘continuing.’ § 1818(e)(l)(C)(ii).
“Fourth, the conduct for which OCC sanctions are imposed may also be criminal (and in this case formed the basis for petitioners’ indictments). This fact is insufficient to render the money penalties and debarment sanctions criminally punitive, Ursery, supra, at 292, 116 S.Ct., at 2149, particularly in the double jeopardy context, see United States v. Dixon, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (rejecting ‘same-conduct’ test for double jeopardy purposes).
“Finally, we recognize that the imposition of both money penalties and debarment sanctions will deter others from emulating petitioners’ conduct, a traditional goal of criminal punishment. But the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence ‘may serve civil as well as criminal goals.’ Ursery, 518 U.S., at 292, 116 S.Ct., at 2149; see also Bennis v. Michigan, 516 U.S. 442, 452, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996) (‘[Forfeiture ... serves a deterrent purpose distinct from any punitive purpose’). For example, the sanctions *119 at issue here, while intended to deter future wrongdoing, also serve to promote the stability of the banking industry. To hold that the mere presence of a deterrent purpose renders such sanctions ‘criminal’ for double jeopardy purposes would severely undermine the Government’s ability to engage in effective regulation of institutions such as banks.
“In sum, there simply is very little showing, to say nothing of the ‘clearest proof required by Ward, that OCC money penalties and debarment sanctions are criminal. The Double Jeopardy Clause is therefore no obstacle to their trial on the pending indictments, and it may proceed.”
522 U.S. at 103-05, 118 S.Ct. 488.
Ryals argues that the administrative action taken against him was criminal in nature and, thus, a bar to further criminal prosecution. The sanctions were imposed by the Sheriff of Mobile County after a disciplinary hearing before a board and after Ryals appealed that ruling to the Sheriff. Ryals was sanctioned for violating Rule XIV of the Mobile County Personnel Regulations. The exhibits attached to Ryals’s mandamus petition state the following concerning the administrative sanctions imposed on Ryals:
“The Defendant was charged with violating the rules of the Mobile County Personnel Board [Rule XIV] in that he, 1) committed a criminal act and that criminal act charged was a violation of the Code of Alabama, Section 13A-10-12, Tampering with Government Records; 2) conduct unbecoming an employee in the public service; 3) neglect of duty, 4) violation of the Mobile County Sheriffs Standard Operating Procedure, specifically, 18(g).
“All of the above violations were based upon the Defendant having failed to serve official court papers while reporting to the civil section docket book clerk of the Sheriffs Office that said documents, had in fact, been personally served. All of the said documents were made the basis of the disciplinary hearing were found in the trunk of the Defendant’s official vehicle, on or about, June 25, 1999 and June 28, 1999. A disciplinary hearing was held on or about July 7, 2000, resulting in a recommendation of termination [of] employment. That decision was overruled by Sheriff Jack Tillman with a resulting decision that the Defendant be suspended for a period of 25 working days and the loss of use of his County vehicle during said suspension.”
First, applying the factors expressed by the United States Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), and United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), we must determine whether the sanction involves an “affirmative disability or restraint.” Clearly, suspension from work for 25 days and the loss of the use of a county vehicle does not meet the traditional definition of punishment. (Ryals states in his brief that he was suspended without pay. The State refutes this assertion, arguing that nothing in the mandamus petition supports it. We likewise can find nothing in the exhibits to support this claim. Even if there was evidence that Ryals was suspended without pay, Ryals has failed to state the monetary loss that he has suffered.) Moreover, the use of a county vehicle is a privilege. As stated in Hudson, “ ‘revocation of a privilege voluntarily granted,’ ... ‘is characteristically free of the punitive criminal element.’ ” 522 U.S. at 96,118 S.Ct. 488.
Second, it is clear after reading Rule XIV from the Mobile County Personnel *120 Board’s regulations that the Rule was intended to impose civil sanctions — the appointing authority has the power to sanction the employee, the proceeding is referred to as a disciplinary proceeding, and the purpose of the rule is to “support the Appointing Authority in enforcing discipline and in demanding courteous and efficient service from public employees.” (Appellee’s brief, Exhibit A.)
Third, a finding of scienter was required to prove that Ryals had tampered with government documents, § 13A-10-12, Ala. Code 1975; however, this alone was not sufficient to establish that the penalties imposed on Ryals by his employer amounted to criminal punishment that barred any subsequent criminal prosecution.[1]
Fourth, conduct that may result in an employee’s dismissal, suspension, or termination is not necessarily criminal conduct. Although Ryals’s conduct was criminal, this fact “is insufficient to render the money penalties and [loss of use of a county vehicle] criminally punitive.” 522 U.S. at 104, 118 S.Ct. 488.
As the United States Supreme Court stated in Hudson, there has been no showing, “to say nothing of the ‘clearest proof required” that the administrative sanctions imposed on Ryals by the Sheriff of Mobile County amount to criminal punishment so as to bar his subsequent criminal prosecution based on the same conduct. See Moman v. City of Leeds, 748 So.2d 226 (Ala.Crim.App.1999) (no violation of the Double Jeopardy Clause when a defendant’s license is suspended after his conviction for driving under the influence); Ex parte K.H., 700 So.2d 1201 (Ala.Crim.App.1997) (no violation of the Double Jeopardy Clause where defendant is suspended from school by school officials and then criminally prosecuted for offense that formed the basis of the suspension); Jenkins v. State, 367 So.2d 587 (Ala.Crim.App.1978), cert. denied, 367 So.2d 590 (Ala.1979) (no violation of the Double Jeopardy Clause where an inmate is subjected to disciplinary action by prison officials and then criminally prosecuted for the same conduct).
In order for a writ of mandamus to issue, the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. State v. Williams, 679 So.2d 275 (Ala.Crim.App.1996). Ryals has failed to satisfy the first prerequisite for the issuance of a writ of mandamus. For the foregoing reasons, this petition is due to be denied.
PETITION DENIED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ„ concur.

. The rule provides that the following conduct may be subject to administrative sanctions:
"The following are among the causes which shall be sufficient for dismissal, suspension or demotion: (a) absence without leave; (b) commitment of any criminal act; (c) conduct unbecoming an employee in the public service; (d) disorderly or immoral conduct; (e) failure to pay or make proper provision for the liquidation of just debts; (f) incapacity due to mental or physical disability, except as hereinafter noted; (g) incompetency or inefficiency; (h) insubordination; (i) intoxication while on duty or public intoxication while off duty; (j) neglect of duty; (k) negligence or wilful damage to public property or waste of public supplies or equipment; (Z) violation of any lawful or reasonable regulations or order made and given by a superior officer; (m) wilful violation of any of the provisions of the Act or these Rules.”