Jason Sinclair Adams petitioned the Court of Criminal Appeals for a writ of mandamus directing the Mobile County Circuit Court to bar his further prosecution on an indictment that has previously resulted in two mistrials. The Court of Criminal Appeals denied the writ, without opinion. Ex parte Adams, [CR-94-0909, April 6, 1995] ___ So.2d ___ (Ala.Crim.App. 1995) (table). Adams has now filed a similar petition in this Court. See Rule 21, Ala.R.App.P.
Adams was charged with manslaughter, pursuant to Ala. Code 1975, § 13A-6-3, and was tried on October 31, 1994. The trial was before a jury and Mobile Circuit Judge Robert G. Kendall. During the course of the trial, Adams's counsel moved for a mistrial after the prosecutor asked one of the witnesses about possible improprieties on the part of Adams's counsel. The trial court instructed the jury to disregard the prosecutor's questions implying impropriety by the defense on the ground that they were not supported by any evidence and were "utterly and completely improper." The trial court denied the motion for a mistrial. However, later in the trial, the prosecutor, during his cross-examination of one of Adams's witnesses, asked whether the witness had heard that Adams had made a particular statement containing a pejorative racial term. Adams's counsel objected. The trial court, on its own motion and without hearing arguments from the defense or the prosecution, declared a mistrial.
When the State sought to reprosecute Adams on the same charge, he filed a plea of former jeopardy and requested a jury trial on the question of former jeopardy. The trial court denied the request for a jury trial on that issue and denied the plea of former jeopardy.
The second trial began on December 5, 1994, before Judge Robert E.L. Key. The case was submitted to the jury on December 6, 1994. However, on December 7, 1994, one of the 12 jurors failed to return from an overnight recess. Although Adams agreed to allow the 11 remaining jurors to continue deliberations, the State refused. Therefore, the trial court declared a second mistrial.
As the court prepared for a third trial, Adams filed another plea of former jeopardy and again requested a jury trial on the question of former jeopardy. He also moved to dismiss the indictment, supporting his motion with affidavits from Adams's attorney, the foreman of the second jury, and excerpts from the court reporter's transcript from the second trial. The affidavits indicated that the jury in the second trial had not believed that Adams was guilty of manslaughter, but that the jury had been unable to agree whether it should find Adams guilty of criminally negligent homicide or should find him not guilty. Adams alleges that on the morning of December 7, 1994, in the trial judge's chambers, the prosecutor had agreed to try the case with 11 jurors, but objected to an 11-person jury after entering the courtroom and realizing that the jury was unlikely to convict Adams for manslaughter. After a hearing on January 13, 1995, the trial court denied Adams's second plea of former jeopardy, without allowing a jury trial on that plea.
We pretermit discussion of various other issues raised by Adams, because we conclude that the trial court erred in denying Adams's request for a jury trial on the question whether the prosecutor intentionally and improperly acted so as to provoke a mistrial in the first trial. If the prosecutor so acted, his actions would require a finding for Adams on his plea of former jeopardy. United States v. Fine, 644 F.2d 1018
(5th Cir.), rehearing denied, 647 F.2d 1123, cert. denied,454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981).
In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083,72 L.Ed.2d 416 (1982), the Court stated: *Page 130 
 "[T]he circumstances under which such a defendant [one who has successfully moved for a mistrial] may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."
456 U.S. at 679, 102 S.Ct. at 2091. In Brannon v. State,549 So.2d 532 (Ala.Crim.App. 1989), the trial court considered the prosecution's attempt to introduce inadmissible evidence before the jury to be so prejudicial that on the defendant's motion for a mistrial it gave the defendant "the option of having a mistrial declared or waiting for a jury verdict and receiving a new trial should the jury convict him."549 So.2d at 536. The defendant chose the second alternative; after the jury returned a conviction, the trial court set the verdict aside and ordered a new trial. On appeal after a second conviction, the defendant argued that he should get the benefit of the Oregon v. Kennedy rule, contending that the prosecutor had improperly and deliberately provoked him into moving for a mistrial. The Court of Criminal Appeals held that the defendant had failed to show that in the first trial the prosecutor had improperly "intended" to provoke a mistrial; therefore, that court held that the retrial was not barred. In explaining its holding, the court reasoned:
 "[T]he trial court ruled on its admissibility as a question of law. Obviously, both the prosecutor and the trial court thought there was a reasonable possibility that the statement was admissible because the court received it on the contingency that the prosecutor could show that it was indeed admissible. The court, had it perceived the evidence to be unquestionably inadmissible, could have, and would have, prohibited its admission right then and there. Indeed, had the court done so, there might be some basis for appellant's contention that the prosecutor had intentionally attempted to provoke appellant into moving for a mistrial. The record as it stands, however, is devoid of [evidence indicating] any such intent by the prosecutor."
Brannon, 549 So.2d at 536.
Adams makes a stronger showing than did the defendant inBrannon that there is a question as to whether the prosecutor improperly "intended" to provoke a mistrial. Ala.R.Crim.P. 15.4(b) states that "unless a jury trial of an issue of fact raised by [a motion raising defenses or objections made before trial pursuant to Rule 15] is waived, such issue shall be tried by a jury if a jury trial is constitutionally required." If Adams had the right to a jury trial, he did not waive it. Based on the particular facts before us, we believe Adams presented substantial evidence that the first mistrial was due to the prosecutor's intentional misconduct. These factual questions create the need for a trial by jury on that issue, pursuant to Rule 15.
During the first trial, the prosecutor asked a witness if Adams's defense counsel had suggested that the witness "lose" the gun that was allegedly used to commit the crime. The defense objected, and the trial court conducted a hearing on the matter. The record shows that when questioned as to his reason for asking that question, the prosecutor never justified asking it. Although the trial court held that the prosecutor's asking the question was not grounds for a mistrial, he found the prosecutor's question unsupported by the evidence and instructed the jury to disregard the question. Soon after, the following transpired:
 "Q: Have you hear rumors or reports that Jason threatened to shoot an individual named Cory Martin?
"A: No, sir.
 "Q: Have you heard rumors or reports that Jason brandished a pistol and said words to the effect that if any niggers in a particular area of town threatened him he would take care of it?
 "Objection by defense counsel: I object to this, if the Court please.
 "The Court: All right, [prosecutor], it now appears that you have injected race into this case for no purpose other than prejudicing this jury. What do you have to say about it? *Page 131 
 "Response by prosecutor: Judge, he is putting people on — he is putting people on the stand —
 "The Court: I declare a mistrial. I have had enough of this, and I ought to dismiss it with prejudice.
 "Response by prosecutor: Judge, he is putting people as witnesses to say that this man has a good reputation. Now, when he does that he opens the door to all kinds of stuff.
 "The Court: He does not open the door to your attempting to prejudice this jury with a racial remark, which you did, and because of it I declare a mistrial. This case is over for now. I will notify you of the resetting date."
This case is unlike Brannon, supra, in that, here, the trial court immediately stopped the proceedings and declared a mistrial based on the prosecutor's question. There is no evidence in the record that the prosecutor was prepared to submit proof that the defendant had ever made the statement the prosecutor asked about. There is no indication in the record that the prosecutor, in any subsequent motion or proceeding, was prepared to show that the question as to the defendant's statement had a factual basis. Under these circumstances, the prosecutor's actions during the first trial could support an inference that he intended to provoke a mistrial by presenting an inflammatory statement in the context of a question without factual support. The Court of Criminal Appeals has stated that "where the appellant's motion for mistrial is prompted by judicial or prosecutorial error intended to provoke the motion" or is otherwise prompted by bad faith actions taken by the prosecutor in an attempt "to harass or prejudice the defendant, then double jeopardy considerations may act to bar retrial."Oliver v. State, 479 So.2d 1385, 1390 (Ala.Crim.App. 1985), citing Lee v. United States, 432 U.S. 23, 33-34, 97 S.Ct. 2141,2147-48, 53 L.Ed.2d 80 (1977).
Adams also argues that although the prosecutor had a legal right to refuse the 11-person jury during the second trial, the facts surrounding that refusal would support an inference of a wrongful intent to provoke a mistrial in the first trial. To that end, Adams argues that the prosecutor's only reason for refusing to allow the 11 jurors to continue deliberations was that he knew there was a strong likelihood that the State would fail to obtain a manslaughter conviction. In fact, Adams suggests that the prosecutor changed his original agreement to allow a verdict when the prosecutor became aware that, during the deliberations on December 6, 1994, the jury had asked the trial court several questions that indicated that the jury was not going to return a manslaughter conviction. Defense counsel requested permission to record all the circumstances surrounding the second mistrial. He stated on the record the conversation that took place in the trial judge's chambers. The record shows that when the trial court asked the prosecutor why he would not accept an 11-person jury, the prosecutor answered that he was "afraid this jury [was] going to acquit the defendant. . . . I just feel that way about it in view of the questions they asked yesterday afternoon." The trial court also made a statement for the record at that time:
 "Well, let me say this for the record. It appears to have been and to be the attitude of the assistant district attorney handling this case that it is his job to procure a conviction at any and all costs without consideration for the rights of the defendant or for the orderly administration of justice, and I find that reprehensible."
Adams argues that the prosecutor's intentional "choice" or "decision" to refuse an 11-person jury was the cause of the second mistrial. This Court has stated:
 "The basic reason for allowing a plea of former jeopardy and not permitting a retrial has been to prevent 'a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury may not convict.' "
Ex parte Anderson, 457 So.2d 446, 448 (Ala. 1984), quotingGreen v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 224,2 L.Ed.2d 199 (1957). Adams argues that the prosecutor's intentional refusal to allow the 11 jurors to continue deliberations is relevant to the question whether the prosecutor's question *Page 132 
presenting a racial slur was intended to provoke the first mistrial. Adams also argues that he could present evidence as to the number of times the Mobile District Attorney's Office has refused to allow an 11-person jury to proceed with deliberations in other trials, and that this evidence would further support an inference that the prosecutor intentionally posed an improper question to provoke the first mistrial.
The State, citing Story v. State, 435 So.2d 1360
(Ala.Crim.App. 1982), reversed on other grounds, 435 So.2d 1365 (Ala. 1983), argues that the question of former jeopardy was a question of law, and, therefore, that a jury trial is not constitutionally required. We disagree. That case does not support the State's position. In Story, the appellant's plea of former jeopardy was based on two grounds:
 "(1) whether a conviction for trafficking in marijuana will bar a subsequent prosecution for possession of methaqualone when both charges arose from the same circumstances and (2) whether a mistrial because of a hopelessly deadlocked jury will bar a subsequent prosecution for the same offense."
435 So.2d at 1364. The Court of Criminal Appeals correctly held that "[t]hese were questions of law which could be decided by the trial judge without a hearing." 435 So.2d at 1364. However, in Story, the Court of Criminal Appeals also wrote:
 "Ordinarily, a court may not overrule a motion of autrefois convict, or plea of former jeopardy, without allowing the party an opportunity to submit supporting evidence. Berland v. City of Birmingham, 36 Ala. App. 488, 60 So.2d 377 (1952), cert. denied, 257 Ala. 571, 60 So.2d 378 (1952). An accused is entitled to a jury trial on the issues of fact raised by the plea and the issue of former jeopardy should be submitted for the jury's determination before submission of the issue of guilt. Kilpatrick v. State, 46 Ala. App. 290, 241 So.2d 132 (1970); Carter v. State, 43 Ala. App. 178, 184 So.2d 847 (1966); Inman v. State, 39 Ala. App. 496, 104 So.2d 448 (1958); Evans v. State, 24 Ala. App. 390, 135 So. 647 (1931)."
435 So.2d at 1364. All of these cases turn on the state and federal constitutional requirement that a defendant not be twice placed in jeopardy for the same offense.
Adams has raised factual, not legal, questions about whether the prosecutor acted improperly and intentionally to provoke the first mistrial. In light of the circumstances of this case raising a question of fact as to the prosecutor's conduct in the first trial, we hold, pursuant to Ala.R.Crim.P. 15.4, that a jury trial should have been granted to determine the factual issue of whether the prosecutor's conduct in the first trial was intentionally designed to provoke a mistrial.
Having determined that Adams has a right to a jury trial on the issue of former jeopardy, we must consider whether mandamus is the proper means for securing that right. Mandamus is a proper remedy to prevent injustice and to prevent an irreparable injury when there is no other adequate remedy at law. Ex parte Hartwell, 238 Ala. 62, 188 So. 891 (1939). However, the writ of mandamus is an extraordinary remedy, to be employed to see that justice is done, and it shall not issue if there is a doubt as to its necessity or propriety. Ex parteGarrison, 260 Ala. 379, 71 So.2d 33 (1954). Mandamus should be reserved for truly extraordinary situations and circumstances.Belcher v. Grooms, 406 F.2d 14 (5th Cir. 1968). To justify the issuance of the writ, there must be a clear showing of injury to the petitioner. Ex parte Cox, 451 So.2d 235 (Ala. 1985); Exparte Jones, 447 So.2d 709 (Ala. 1984).
The alternative to issuing the writ of mandamus would be to subject Adams to a third criminal trial before determining whether that trial was barred by the double jeopardy provisions of our state and federal constitutions. Under Alabama law, Adams's ordinary remedy would be to raise the former jeopardy argument on appeal after this third trial, if that trial results in a conviction. The United States Supreme Court has held that the rights conferred on an accused by the Double Jeopardy Clause of the United States Constitution would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction *Page 133 
and sentence. Abney v. United States, 431 U.S. 651,97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The Supreme Court stated that "because of th[e] focus on the 'risk' of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." Abney, 431 U.S. at 661,97 S.Ct. at 2041. The Supreme Court went on to hold that "if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the [double jeopardy] clause, his double jeopardy challenge to the indictment must be reviewable before the subsequent exposure occurs." Id.
This Court has generally denied mandamus relief to defendants challenging a trial court's ruling on a plea of former jeopardy. See, e.g., Ex parte Spears, 621 So.2d 1255 (Ala. 1993). However, we have recognized an exception to that general rule when the defendant has been deprived of the constitutional right to a jury trial. Spears, citing Ex parte Rush,419 So.2d 1388 (Ala. 1982). Moreover, in Ex parte Roberts, 662 So.2d 229
(Ala. 1995), this Court allowed review by mandamus of a double jeopardy claim. See also Ex Parte Ziglar, 669 So.2d 133 (Ala. 1995).
Based on the foregoing, we issue the writ. The trial court is directed to order a trial by jury on the question whether the prosecutor intentionally and improperly acted so as to provoke the mistrial in the first trial.
WRIT GRANTED.
MADDOX, SHORES, KENNEDY, and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
BUTTS, J., dissents.