McMILLAN, Judge.
The appellant, Stanley Frieson Washington, was indicted on charges of trafficking in cocaine, distribution of a controlled substance, and two counts of failure to affix tax stamps. The trial court consolidated the cases for trial, which began on November 14, 1996. The State’s first witness violated a pretrial order not to comment on the appellant’s prior trouble with the law, and the trial court granted a mistrial. On September 2, 1997, a second trial began, and the appellant was found guilty on all of the counts charged in the indictments. The trial court sentenced him as a habitual offender to life imprisonment without parole on the trafficking conviction, to life imprisonment on the distribution conviction, and to 20 years’ imprisonment on each of the tax stamp convictions. The court ordered all of the sentences to run concurrently.
Before the second trial, the appellant filed a motion to dismiss the indictment, arguing that he should be granted a jury trial on the issue whether the prosecutor’s conduct in the first trial was intended to prejudice him and cause a mistrial because, if such an intent is shown, double jeopardy may act to bar retrial. The trial court denied the appellant’s motion and proceeded to trial.
The State has requested a stay of this appeal and a remand of this cause in order to allow a jury trial on the issue whether the prosecutorial misconduct was designed to provoke a mistrial. Pursuant to Ex parte Adams, 669 So.2d 128 (Ala.1995), and Rule 15.4, Ala.R.Crim.P., the appellant should have been granted a jury trial on the issue of fact raised in his pretrial motion. Therefore, this cause is due to be, and it is hereby, remanded to the trial court for a jury trial on the issue whether misconduct by the prosecutor was intentionally designed to prejudice the appellant and to provoke a mistrial. A return should be filed with this Court within 60 days after the release of this opinion.
REMANDED WITH INSTRUCTIONS.
LONG, P.J., and COBB, BROWN, and BASCHAB, JJ., concur.

On Return to Remand

McMILLAN, Judge.
On August 14, 1998, we remanded this cause to the trial court for a jury trial on the issue whether misconduct by the prosecutor had been intentionally designed to prejudice the appellant, Stanley Frieson Washington, and to provoke a mistrial. Washington v. State, 818 So.2d 411 (Ala.Crim.App.1998). The appellant’s first trial had ended in a mistrial, and he was con *416 victed after a second trial. The trial court has now filed its return, which reflects that, on remand, another jury trial was conducted on the specific issue whether the prosecutor’s misconduct at the first trial was intentionally designed to provoke a mistrial, thereby barring a retrial on double-jeopardy grounds. After the appellant presented witnesses and other evidence in support of his claim at the trial on remand, the State moved for a dismissal or, in the alternative, for a directed verdict. The trial court directed a verdict for the State, finding, in pertinent part, as follows:
“The Court finds that the defendant has been fully heard on this issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the defendant on that issue. Specifically, there is no evidence to support the claim by the defendant that the prosecutor’s conduct during the criminal trial was intentionally designed to prejudice the defendant and provoke a mistrial.”
The appellant’s first witness at the trial on remand was the prosecutor at the appellant’s original trial, which had resulted in a mistrial. He testified that, after the trial court had granted a motion in limine regarding a taped-recorded telephone conversation in which the appellant had mentioned his prior arrests and his trouble with the law, the prosecutor met with Officer Kenneth Parham, who was to testify at the trial. He told the officer that the tape would not be played at trial and that the officer could not testify concerning statements on the tape about the appellant’s prior legal problems. Parham indicated that he understood. The prosecutor also told the officer to review the tape so that he could testify as to the details of a drug transaction that were on the tape and that the trial court had ruled would be admissible. During trial, the prosecutor asked Officer Parham the following question: “Did [the appellant] indicate to you what further instructions you were to do as far as this transaction?” The officer responded as follows:
“He had just told me to, you know, page him when I was ready and that, you know, he — we had both talked about what, was he going to be there again or was I just going to deal just with him, which was what I usually did. And he told me that he really didn’t want to touch it that time because he had already been in some trouble, was facing something about transporting and he would send somebody else down to give it to me.”
The prosecutor testified that by asking the question he was attempting to establish that the officer had accepted delivery of the cocaine from a third party based on the appellant’s instructions. He said that he had no idea that the officer would make the statement he made in response to the question.
Officer Parham then testified that the prosecutor had told him that he was not to say anything about a pending conviction against the appellant or his prior legal troubles; he testified that, when he was questioned, he “just didn’t think about it” and his answer “just came out naturally.” The appellant subsequently questioned the officer outside the presence of the jury concerning the amount of cocaine involved in the March 31 distribution offense, in order to determine whether there was misconduct because the prosecutor did not investigate a discrepancy between the weight of 26 grams the officer testified to and the toxicologist’s weight of 23.74 grams. The officer acknowledged that there had been publicity concerning alleged problems with the holding of drugs in the police department. The appellant then questioned the prosecutor, who testi *417 fied that he understood that the weight of the cocaine in the April 5 trafficking sale was 28.58 grams, only slightly over the weight of 28 grams necessary to support a trafficking conviction. He also testified that Officer Parham’s report stated that the cocaine was turned over to Sgt. Ware on March 31, while the Department of Forensic Sciences’ report indicated that Officer Parham delivered the cocaine on April 5.
In his appeal to this court from his convictions, the appellant raised a number of additional claims. Testimony at trial relevant to those claims tended to show the following: With regard to the distribution charge, Officer Kenneth Parham testified that, on March 31, 1995, he and a confidential informant drove to a car wash in Ensley to purchase cocaine. They found the appellant sitting outside. The informant got out of the car, and the appellant got in and took a quantity of cocaine from his pocket.. The officer weighed the cocaine on his own scales and discovered that the cocaine weighed approximately 26 grams instead of the agreed-upon 28 grams. The appellant then reduced the price. The officer testified that the appellant took $900 from him, left the car, and then returned with $50 change. A tape recording of the March 31 transaction was played for the jury. After the sale, Parham put the cocaine in a manila envelope, which he taped and marked with his name and initials, the case number, and the date and time of seizure. He secured the envelope, which he identified as State’s Exhibit 1, in the property room for approximately 5 or 10 minutes and then took it directly to the toxicology laboratory. He said that his written report stated that he turned the cocaine over to Sgt. Ware for[1]-delivery because that was his intention at the time he wrote the report, but that he and Ware subsequently decided to deliver the cocaine together. Forensic expert John Brunner testified that he received State’s Exhibit 1 in a sealed condition from Officer Parham and determined that it contained a double plastic baggie of 23.74 grams of cocaine. Brunner testified that he received the envelope from Parham on April 5.
Officer Parham testified that, on April 5, 1995, he talked with the appellant by tele-' phone about making a second purchase of cocaine. A tape recording of this conversation was played for the jury. The following day, April 6, Parham and the appellant talked again, sometime after 10:00 a.m. The appellant told Parham that a third party would deliver the cocaine at the same car wash where the previous sale had taken place. This conversation was taped-recorded, but the tape was not played for the jury. Later that day, Parham and the appellant talked a third time, and the appellant told Parham that the man making the delivery would be wearing a red and white baseball cap. The appellant also told Parham to bring $900 and his scales. A tape recording of this conversation was played for the jury.
At approximately 3:00 p.m., the officer drove to the car wash and saw the appellant standing outside. The appellant made eye contact and then went behind the car wash. A man in a red and white baseball cap then came from behind the car wash, entered the officer’s car, and gave him a quantity of cocaine. Officers immediately arrested the man in the baseball cap, subsequently identified as Marvin Varner, and the appellant. Parham testified that, after the sale he placed the cocaine in a manila envelope, sealed and initialed it, and wrote the name “Marvin Varner” on the outside. He identified the envelope as State’s Exhibit 2. He stated that the cocaine was never out of his control and that Officer John Shepard and Sgt. Ware subsequently accompanied him when he took the cocaine *418 to the toxicology laboratory. Officer Shepard testified that he received the envelope in a sealed condition from Officer Parham on April 7 and that he took it directly to the toxicology laboratory. He could not recall whether Officer Parham and Sgt. Ware rode with him. Forensic expert Danny Kirkpatrick testified that he received State’s Exhibit 2 from Officer Shepard in a sealed condition. He subsequently determined that the envelope contained a plastic baggie of 28.58 grams of cocaine.
The appellant was charged with, and convicted of, distribution of a controlled substance (March 31 sale), trafficking in cocaine (April 6 sale), and two counts of failure to affix tax stamps. He appeals to this Court. We remanded the case for a jury trial on the issue of whether prosecu-torial misconduct was intended to provoke a mistrial. After hearing the evidence, the trial court directed a verdict for the State. This appeal addresses both the trial on remand and the trial that resulted in the appellant’s convictions.

Trial on Remand

I.
With regard to the trial held on remand, the appellant contends that the trial court erred in directing a verdict for the State. Citing Rule 15.4, Ala.R.Crim.P., and Ex parte Adams, 669 So.2d 128 (Ala.1995), he argues that a “jury determination” was required on this issue. He also argues that there was sufficient evidence on which to submit the issue of prosecutorial misconduct to the jury.
With regard to his first argument, Rule 15.4 applies to pretrial motions; it is inapplicable to the appellant’s trial on remand because, in that trial, the court did not issue its order until after the close of the appellant’s case. At that time, the appellant had been given a full opportunity to present, in a jury trial, whatever evidence he chose to present. With regard to the second argument, a jury determination was required in Ex parte Adams, supra, because, in that case, the prosecutor failed to show that there was any factual or evidentiary basis for his questions. Here, however, the prosecutor’ explained that, because a third party actually delivered the cocaine involved in the trafficking charge, he asked his question in order to link the appellant to the controlled substance. No contradictory evidence was offered by the appellant. When the facts concerning a question of former jeopardy are not controverted, the trial court has the authority to direct a verdict. Spears v. State, 647 So.2d 15 (Ala.Crim.App.1994).
With regard to his sufficiency-of-the-evidence argument, the appellant argues that the officer initially testified that he thought his response was the response the prosecutor wanted. However, this testimony failed to establish improper intent on the part of the prosecutor, particularly in light of the prosecutor’s testimony that he did not expect the officer to respond as he did. The appellant also argues that, despite discrepancies concerning the weight of the cocaine purchased on March 31 and the date it was delivered to the laboratory, the prosecutor did not investigate whether an amount could have been taken from th'e cocaine bought in the first transaction and added to the cocaine bought in the second transaction in order to achieve the weight necessary for a trafficking charge in the second transaction.
However, the prosecutor explained that he did not conduct an investigation because, he said, he attributed the discrepancy in the weight to an inaccuracy in the officer’s scales. He also said that the discrepancy in the date was not a “red flag” in his mind because drugs could be signed in by a receptionist at the laboratory and then received by the toxicologist several *419 days later when the toxicologist prepared the analysis. There was no evidence from the testimony of the officer or the prosecutor that the prosecutor intended to prejudice the appellant or to provoke a mistrial.
II.
The appellant’s second contention is that the trial court erred in not recusing himself from sitting at the trial on remand. The appellant had filed a motion seeking the judge’s recusal, which the judge denied. He argues that the judge was a .potential witness because he had heard several of the discussions that precipitated the mistrial. He also argues that .the judge’s statement after the mistrial, that he did not believe that the testifying officer had “deliberately violated any of the rules of the court,” showed that the judge was predisposed in favor of the prosecution and that he had already made up his mind on the issue of intent. The appellant argues that this predisposition was further reflected by the fact that he granted the prosecutor’s motion for a directed verdict.
Canon 3.C(l)(a) of the Alabama Canons of Judicial Ethics, states that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including instances in which he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts. Here, the appellant failed to show that the judge had personal knowledge of any facts relating to the intent of the prosecutor or that the judge was likely to be a material witness in the remand proceeding. Canon 3.C(l)(d)(iii). He also failed to offer any evidence of bias or prejudice on the part of the judge. The statement in question concerned the intent of the officer, rather than the intent of the prosecutor, and it was made in the course of the court’s granting the appellant’s motion for a mistrial. With regard to the granting of the directed-verdict motion, an adverse ruling is not in itself sufficient to warrant recusal. Woodall v. State, 730 So.2d 627 (Ala.Crim.App.1997), aff'd in part, rev’d in part on unrelated grounds, 730 So.2d 652 (Ala.1998). The appellant failed to show that the judge should.have disqualified himself from presiding over the trial on remand.
III.
The appellant next contends that the trial court erred in overruling his objection to what he says were leading questions asked by the prosecutor on cross-examination during the trial on remand.[1] He argues that the original prosecutor and the undercover officer clearly were witnesses adverse to the defense and that, pursuant to § 12-21-138, Ala.Code 1975, the trial court had the discretion to prevent the questions if justice required it to do so. Section 12-21-138 states that leading questions are generally allowed on cross-examination, but that the court has discretion to refuse such questions when, due to the conduct of the witnesses or other reasons, justice requires it.
The appellant has failed to show, at trial or on appeal, that justice required the disallowance of the prosecutor’s questions. At trial, the prosecutor asked Officer Par-ham if the appellant told him “about going by some garage” when the officer asked if he would be dealing only with the appellant. The appellant then stated, “This witness is adverse to the defendant,” but he did not offer any evidence that the ques *420 tion should be disallowed on the basis that justice required it. On appeal, the appellant argues that Officer Parham changed his initial testimony, which was that he thought his answer concerning the appellant’s prior trouble with the law was an accurate response, after the prosecutor asked him leading questions. However, the appellant did not object on this ground at trial, and he has failed to show any relationship between the officer’s initial testimony and the questions to which he objected. The appellant has not shown that the trial court abused its discretion by permitting the prosecutor to ask the questions at issue.
IV.
The appellant contends that the trial court erred in placing the burden of proof on him in the trial on remand. He argues that the State should have been required to prove that the prosecutor did not intend to cause a mistrial. However, the burden of proving a plea of former jeopardy is on the defendant. Spears v. State, supra. A directed verdict is proper when the party who bears the burden of presenting evidence fails to present substantial evidence in support of its position. Id

Trial on Offenses

[2]

V.
With regard to the trial in which he was convicted, the appellant contends that the court erred in denying his motion to dismiss the trafficking charge. He argues that § 13A-12-23H2), Ala.Code 1975, the cocaine trafficking statute, violates the right to equal protection because, he says, it prohibits the sale of 28 grams or more of cocaine or “any mixture containing cocaine;” while the comparable marijuana trafficking statute does not include “stems and weeds [sic]” in weighing marijuana.
The appellant’s argument is without merit because the marijuana trafficking statute was amended in 1995, after the Alabama Supreme decided Ex parte Presley, 587 So.2d 1022 (Ala.1991), which the appellant cites in support of his claim. Section § 13A-12-231(1) currently defines marijuana to include every “mixture” of the marijuana plant, including its stalks and seeds. Under the current statutes, therefore, persons who traffic in mixtures of cocaine and marijuana are treated similarly.
The appellant also argues in his reply brief that, even under the amended statute, cocaine and marijuana traffickers are treated differently because, he says, a mixture of cocaine could include a substance such as dirt, while a mixture of marijuana can contain only derivatives of the marijuana plant. He argues that, under the cocaine statute, a person possessing 13 grams of cocaine and 16 grams of dirt could be convicted of the same offense as a person who possesses 29 grams of 'cocaine.
In an equal-protection analysis of a law that does not involve a suspect class, the standard of review is whether the statute is rationally related to a legitimate government objective. State v. Kimpel, 665 So.2d 990 (Ala.Crim.App.1995). Here, the substances in question clearly have different physical characteristics, and the different definitions of “mixture,” therefore, are rationally related to the government’s objective of prohibiting trafficking in particular quantities or mixtures of the two drugs.
*421 In Ex parte Fletcher, 718 So.2d 1132 (Ala.1998), the Alabama Supreme Court held that, for the purposes of the cocaine trafficking statute, if the illegal drug is easily distinguishable from, and easily separable from, legal substances, only the weight of the illegal drug should be counted. However, when an illegal drug is commingled with or diffused among legal substances, the weight of the entire mixture should be counted. Id. Here, the toxicologist testified that the material he examined was a white powder and he testified that he weighed all of it in determining the weight. The appellant therefore was treated similarly to the defendant in Clark v. State, 562 So.2d 620 (Ala.Crim.App.1989), in which white man-nitol powder and white powder cocaine were weighed together as a “mixture.” The appellant has not shown that the cocaine trafficking statute violates the right to equal protection.
VI.
The appellant contends that the trial court erred in denying his motion for funds to hire an expert to examine the authenticity of the tape recordings used in his trial. He argues that he told the Court that he had reason to believe that the tapes may have been altered and that he lacked the expertise to examine them. He further argues that his motion satisfied the standard set out in MacEwan v. State, 701 So.2d 66, 70 (Ala.Crim.App.1997), of showing that “there exists a reasonable probability that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.”
However, the case the appellant cites also states that a defendant must offer more than mere assertions that a requested expert would be beneficial to his defense. MacEwan, supra. In Ex parte Moody, 684 So.2d 114 (Ala.1996), the Alabama Supreme Court stated that, in order to meet the standard of proof, an indigent defendant must show, with reasonable specificity, that the expert is absolutely necessary to answer a substantial issue or question raised by the State or to support a critical element of the defense. Here, the showing made by the appellant clearly lacked the required specificity. The trial court therefore did not err in denying his motion.
• VII.
The appellant contends that the trial court erred in denying his motion to dismiss, because, he says, the cocaine trafficking statute is unconstitutional. He argues that the statute is vague and that it allows unequal punishment because, he says, the language “any mixture containing cocaine” permits the same punishment for two people with different amounts of cocaine.
A law that does not fairly inform a person of prohibited conduct and that encourages arbitrary and discriminatory enforcement is unconstitutional. Senf v. State, 622 So.2d 435 (Ala.Crim.App.1993). However, the statute in question clearly states that the offense of trafficking in cocaine involves 28 grams or more of cocaine or “any mixture containing cocaine.” A term is not unconstitutionally vague if it does not leave a person of ordinary intelligence in doubt as to what it means. Chambers v. State, 364 So.2d 416 (Ala.Crim.App.1978).
The fact that the smallest proportion cocaine is sufficient to constitute a “mixture” makes the statute stringent, but it does not make the statute vague. All persons who possess a mixture of cocaine, whatever the proportion of cocaine in that mixture, are punished similarly under the statute.
*422 YIII.
The appellant contends that the trial court erred in denying his motion to reveal the identity of the confidential informant because, he says, the informant participated in the March 31 transaction. The record reveals that the issue of the informant’s identity arose for the first time during trial, when the appellant asked Officer Parham for the name of the informant and the trial court sustained the State’s objection to the question. At the close of the State’s evidence, the appellant again raised this issue, stating that he wanted to know the name of the confidential informant and wanted to have an opportunity to talk with her. The trial court denied the appellant’s motion.
A defendant has the burden of demonstrating the need for disclosure of a confidential informant’s identity. Lightfoot v. State, 531 So.2d 57 (Ala.Crim.App.1988). In order to satisfy this burden, the defendant must file a pretrial motion seeking the informant’s identity and request an in camera hearing on the motion. Id. Here, the appellant failed to timely seek such disclosure. Therefore, the trial court properly denied his motion.
IX.
The appellant contends that the trial court erred in failing to instruct the jury that, with regard to the trafficking case, the appellant must have had knowledge that the amount of cocaine being sold exceeded 28 grams. He argues that he requested such an instruction in his requested jury charge no. 3. He further argues that the instruction given by the court was erroneous because, he says, it failed to require knowledge of the quantity of cocaine and because, he says, it implied that he could be convicted regardless of whether he knew the cocaine he was selling was 28 grams or more. In Harris v. State, [Ms. CR-99-1439, August 25, 2000] — So.2d - (Ala.Crim.App.2000), this court held that, in a prosecution for trafficking in cocaine, the State is required to prove (1) that the defendant knowingly possessed cocaine and (2) that the amount of cocaine he possessed exceeded 28 grams. The State is not required to prove that the defendant knew that the amount he possessed weighed more than 28 grams. Id. The appellant’s requested instruction was not a correct statement of the law, and the trial court, therefore, did not err in refusing to give it.
X.
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal regarding the charge of trafficking in cocaine. Specifically, he argues that the State faded to show that he was a party to the April 6 sale and failed to sufficiently connect him to the offense.
In order to sustain a conviction for trafficking in cocaine, the State must show that the appellant knowingly sold, manufactured, delivered, or brought into Alabama, or was knowingly in possession of, 28 grams or more of cocaine or of any mixture containing cocaine. § 13A-12-231(2), Ala.Code 1975. A defendant may be convicted of the offense if he participates in a sale, such as acting as an agent for the procurer and the buyer. Chevere v. State, 607 So.2d 361 (Ala.Crim.App.1992). By telling an undercover officer where he or she can purchase illicit drugs, a defendant participates in the sale and thereby provides a criminal linkage sufficient to support a conviction of distributing a controlled substance. Harrison v. State, 615 So.2d 1247 (Ala.Crim.App.1992).
In the present case, the State offered evidence that the appellant made arrange *423 ments by telephone for the second sale of cocaine to Officer Parham. He negotiated the conditions of the sale, including the location and the amount and price of the cocaine to be sold. He also told the officer that he would send someone to make the delivery, and he provided a detailed description of the man with whom the officer was to deal. This evidence clearly was sufficient to show that the appellant participated in the second sale. Because the State also offered evidence that the appellant’s participation was knowing and that the amount of cocaine was more than 28 grams, the trial court properly denied the appellant’s motion for a judgment of acquittal.
XI.
The appellant contends that the trial court erred in denying his three requested jury charges regarding “brokers.” He argues that there was evidence to support the theory that he was merely acting as a broker in the alleged trafficking offense because, he says, he made several statements to Officer Parham indicating that he was not currently in possession of the cocaine and that he did not intend to sell drugs any more. He also argues that he told the officer that “the person you are dealing with, he was down there that day [March 31], you know all I did was just hand it to you.”
Requested instructions are properly refused if they are not supported by the facts of the case. Bogan v. State, 529 So.2d 1029 (Ala.Crim.App.1988). A person acts as a broker if he merely connects a willing seller and a willing buyer. Mitchell v. State, 570 So.2d 738 (Ala.Crim.App.1990). Here, the actions of the appellant clearly went beyond those of a broker. All of arrangements for the April 6 sale were made by the appellant, and he was present at the scene to make the initial contact with the officer. Although the delivery was made by Marvin Varner, there was no evidence of any willing seller other than the appellant.
XII.
The appellant contends that the trial court erred in refusing to give the jury his requested instruction regarding the chain of custody of the cocaine admitted into evidence as to both the trafficking offense and the distributing offense. He argues that the charges should have been given because, he says, the State failed to establish a proper chain in both cases. The requested charges were as follow:
“If you find that there has been a break in the chain of custody or inconsistencies regarding the transportation of drugs to the state toxicologist[,] then you can consider this and give it whatever weight you think is appropriate in deciding Stanley Washington’s guilt or innocence in each case.”
“[If you find that there has been a break in the chain of custody or inconsistencies regarding the transportation of drugs to the state toxicologist,] then you can consider this and give it whatever weight you think is appropriate in deciding whether the drugs admitted into evidence are the same as those taken at the scene of each arrest.”
The appellant argues with regard to the distribution offense 'that the forensic expert said that he received the cocaine on April 5, not March 31' as stated by Officer Parham, and that the cocaine weighed 23.74 grams, not 26 grams as weighed by Officer Parham. He argues with regard to the trafficking offense that Officer Parham and Officer Shepard both said that they delivered the cocaine to the laboratory, and the forensic expert said that he had received it from Officer Shepard.
*424 In order to establish a proper chain of custody, the State must show each “link,” or person who handled the item, and each link’s receipt, disposition, and safeguarding of the item. If the State fails to identify a link or fails to show any of the three criteria as to each link, the result is a “missing” link. If, however, the State shows each link and all the criteria as to each but does so by circumstantial evidence instead of the direct testimony of the link, the result is a “weak” link. A weak link presents a question of credibility and weight, not one of admissibility. Ex parte Holton, 590 So.2d 918, 919-20 (Ala.1991).
Requested instructions are properly refused if they are inapplicable to the facts of the case. Bogan v. State, supra. Here, with regard to the March 31 sale, the State established a chain of two links, Officer Parham and forensic expert John Brunner. Both of them testified to their receipt, disposition, and safeguarding of the cocaine. The discrepancy in the date of delivery to Brunner and the weights recorded by the two witnesses went to credibility; it did not constitute a break in the chain.
Similarly, with regard to the April 6 sale, the State established a chain of three links, Officer Parham, Officer Shepard, and forensic expert Danny Kirkpatrick. All of them testified concerning their receipt, disposition, and safeguarding of the cocaine. Inconsistencies in their testimony concerning the delivery to the laboratory was a credibility issue and did not constitute a break in the chain of custody. Because the instructions requested by the appellant were not applicable to the facts of the case, the trial court did not err in refusing them.
The judgment of the trial court on remand, holding that the prosecutor’s misconduct was not intended to provoke a mistrial, is affirmed. The appellant’s convictions and sentences for trafficking in cocaine, distributing a controlled substance, and failing to affix tax stamps are likewise affirmed.
JUDGMENT ON TRIAL ON REMAND AFFIRMED; CONVICTIONS AND SENTENCES FOR TRAFFICKING IN COCAINE, DISTRIBUTING A CONTROLLED ' SUBSTANCE, AND FAILING TO AFFIX TAX STAMPS AFFIRMED.
LONG, P.J., and BASCHAB and FRY, JJ., concur.
COBB, J., concurs in the result.

. In an apparent typographical error, the appellant identifies his claim in the heading in his brief as an objection to ''hearsay” 'questions. However, his objection at trial and the argument portion of his brief both concern "leading" questions, which is the issue this court addressed.

. The appellant was tried twice on these charges; the first trial resulted in a mistrial. The arguments presented under this heading are related to his second trial, which ended in convictions on four counts.